IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 20-01247 (ESL) |
| DESTILERIA NACIONAL, INC. | CHAPTER 11 |
| Debtor | |

## OPINION AND ORDER

This case is before the court upon the *Motion for Voluntary Dismissal* filed Destilería Nacional, Inc. (hereinafter referred to as the "Debtor") and Miramar Brewing LLC's (hereinafter referred to as "Miramar") *Opposition to Debtor's Motion for Voluntary Dismissal* (Docket No. 293). Banco Popular de Puerto Rico (hereinafter referred to as "BPPR") filed its *Omnibus Opposition to (I) Motion for Reconsideration of Opinion and Order Granting Motion for Allowance of Administrative Expense Claim for Debtor's Use of PPP Loan Funds and (II) Motion for Voluntary Dismissal of Chapter 11 Case*. Dr. William Cruz, the Debtor's sole shareholder, filed a *Motion to Join and in Support of Debtor's Motion for Voluntary Dismissal (Docket No. 293)* and Miramar filed its *Reply to Dr. William Cruz's Motion to Join and in Support of Debtor's Motion for Voluntary Dismissal (Docket No. 326)* and Dr. William Cruz's *Sur-Reply to Miramar's Response to Cruz's Motion in Support of Debtor's Motion for Voluntary Dismissal*. For the reasons stated herein, the Debtor's *Motion for Voluntary Dismissal* is denied.

## Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(1) and (b)(2)(A). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

## Facts and Procedural Background

The Debtor filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on March 6, 2020 (Docket No. 1). The Debtor included in Schedule E/F: Creditors Who Have Unsecured Claims creditor Porfirio Díaz Torres with two (2) unsecured non-priority claims,

namely: a contingent, unliquidated, disputed unsecured claim based on a state court complaint (case No. 2019CV2819) in the amount of $47,000.00 and (ii) and an unsecured claim based on a state court Judgment in the amount of $252,130.00 (Docket No. 20). On June 11, 2020, the Debtor filed an Amended Schedule E/F: Creditors Who Have Unsecured Claims to include the unsecured claim of the Estate of Ditto Inc. which is listed as a contingent, unliquidated and disputed claim pursuant to a counterclaim filed in adversary proceeding No. 19-00426 in the amount of $90,000.00 (Docket Nos. 38 & 42). On June 16, 2020 a status meeting was held in which the Debtor disclosed that the reason for filing bankruptcy was to stop the execution of a Judgment. The Minutes show that the court noted an issue with cash flow as disclosed in the March and April 2020 Monthly Operating Reports (Docket Nos. 36 & 37) (Docket No. 48).

On September 10, 2020, the Debtor filed a *Motion for Extension of Time up and until January 1, 2021 to Finalize and File Disclosure Statement and Plan* and the same was granted on September 18, 2020 (Docket Nos. 78 & 79). Thereafter, on December 30, 2020, the Debtor filed a *Motion for Extension of Time Up and Until February 6, 2021* to submit the Disclosure Statement and Plan of Reorganization and the same was granted on January 4, 2021 (Docket Nos. 127 & 134).

On December 31, 2020 a *Transfer of Claim Other than for Security* was filed by the transferee disclosing that Cidra Excavation, LLC had transferred its claim (proof of claim #6-1) in the amount of $3,278 to Miramar (Docket No. 129). On said date, Miramar filed a *Disclosure Statement with Respect to the Chapter 11 Plan of Creditor and Party in Interest Miramar Brewing LLC for Debtor and Debtor in Possession Destilería Nacional Inc.* and the *Chapter 11 Plan of Creditor and Party in Interest Miramar Brewing LLC for Debtor and Debtor in Possession Destilería Nacional Inc.* (Docket Nos. 131 & 132). On January 8, 2021, the court entered an *Amended Order Conditionally Approving Disclosure Statement, Fixing Time for Filing Acceptances or Rejections of the Plan, and Fixing the Time for Filing Objections to the Disclosure Statement and to the Confirmation of the Plan, Combined with Notice Thereof and*

*of the Hearing on Final Approval of the Disclosure Statement and the Hearing on Confirmation of the Plan Small Business Election; 11 U.S.C. §1125(f)* (Docket No. 138).

On January 13, 2021, the Debtor filed its *Small Business Disclosure Statement* and its *Small Business Plan of Reorganization* (Docket Nos. 147 & 148). Also, on said date, the Debtor filed an *Urgent Motion for the Inclusion of Debtor's Disclosure Statement and Plan in Scheduled Hearing* (Docket No. 150). On January 14, 2021, the court entered an *Order Conditionally Approving Disclosure Statement, Fixing Time for Filing Acceptances or Rejections of the Plan, and Fixing the Time for Filing Objections to the Disclosure Statement and to the Confirmation of the Plan, Combined with Notice Thereof and of the Hearing on Final Approval of the Disclosure Statement and the Hearing on Confirmation of the Plan Small Business Election; 11 U.S.C. §1125(f)* (Docket No. 152).

On January 15, 2021, Miramar filed the *First Amended Disclosure Statement with Respect to the Chapter 11 Plan of Creditor and Party in Interest Miramar Brewing LLC for Debtor and Debtor in Possession Destilería Nacional Inc.* and the *First Amended Chapter 11 Plan of Creditor and Party in Interest Miramar Brewing LLC for Debtor and Debtor in Possession Destilería Nacional Inc* (Docket Nos. 154 & 155). On January 27, 2021, Miramar filed a *Plan Supplement to First Amended Chapter 11 Plan of Creditor and Party in Interest Miramar Brewing LLC for Debtor and Debtor in Possession Destilería Nacional Inc.* (Docket No. 172). On February 3, 2021, Miramar filed its *Statement Regarding Requirements of 11 U.S.C. §1129* (Docket No. 215). On February 3, 2021, Miramar filed a *Motion to Submit Ballots* (Docket No. 216). On February 3, 2021, the Debtor filed its *11 U.S.C. §1129 Statement* (Docket No. 217).

On February 12, 2021, the hearing on the final approval of the First Amended Disclosure Statement and confirmation of the First Amended Plan of Reorganization filed by Miramar and the final approval of the Debtor's Disclosure Statement and confirmation of the Plan of Reorganization was held. The court ordered as follows, "1. Upon Debtor's admittance that the Chapter 11 Small Business Plan dated January 13, 2021 (dkt. #148) cannot be confirmed as no

class of creditors has accepted the plan, conformation of the plan is hereby denied. 2. The disclosure statement filed by the Debtor (dkt. #147) is not finally approved as it fails to disclose the value of the Debtor's business and fails to address the impact of this court's decision entered on February 5, 2021 concluding that the amounts owed to BPPR are an administrative claim (dkt #233)" The minutes of the hearing also disclose that matters not decided will be taken under advisement by the court such as the final approval of Miramar's First Amended Disclosure Statement and First Amended Plan of Reorganization. (Docket No. 266).

On March 19, 2021, the Debtor filed its *Motion for Voluntary Dismissal* (Docket No. 293). On March 22, 2021, Miramar filed its *Notice of Intent to File Opposition to Debtor's Motion for Voluntary Dismissal (Docket No. 293)* (Docket No. 297). On March 31, 2021, Miramar filed a *Motion to Inform about filing of Opposition to Debtor's Motion for Voluntary Dismissal* (Docket No. 305). On March 31, 2021, BPPR filed an *Omnibus Motion for Extension of Time to State Position as to (I) Motion for Reconsideration of Opinion and Order Granting Motion for Allowance of Administrative Expense Claim for Debtor's Use of PPP Loan [Funds] and (II) Debtor's Motion for Voluntary Dismissal of Chapter 11 Case* and the same was granted on April 5, 2021 (Docket Nos. 306 & 309). On April 5, 2021, Miramar filed an *Omnibus Motion for Brief Extension of Time to File (I) Opposition to Debtor's Motion for Reconsideration of Opinions and Orders Denying Consignment and Objection to Claim No. 6 and (II) Opposition to Debtor's Motion for Voluntary Dismissal* and the same was granted on April 6, 2021 (Docket Nos. 311 & 313). On April 5, 2021, Dr. William Cruz filed a *Motion for Extension of Time to State Position with Respect to Debtor's Motion for Voluntary Dismissal* and the same was granted on April 6, 2021 (Docket Nos. 312 & 314). On April 7, 2021, Dr. William Cruz filed a *Second Motion for Extension of Time to State Position with Respect to Debtor's Motion for Voluntary Dismissal* and the same was granted on April 8, 2021 (Docket Nos. 316 & 322). On April 7, 2021, Miramar filed its *Opposition to Debtor's Motion for Voluntary Dismissal* (Docket No. 318). On April 7, 2021, BPPR filed its Omnibus Opposition to *(I) Motion for Reconsideration of Opinion and Order Granting Motion for Allowance of Administrative*

*Expense Claim for Debtor's Use of PPP Loan Funds and (II) Motion for Voluntary Dismissal of Chapter 11 Case* (Docket No. 319). On April 9, 2021, Dr. William Cruz filed a *Motion to Join and in Support of Debtor's Motion for Voluntary Dismissal* (Docket No. 326). On April 16, 2021, Miramar filed a *Notice of Intent, or Motion for Leave, to File Reply to Dr. William Cruz's Motion to Join and in Support of Debtor's Motion for Voluntary Dismissal and for Related Term* and the same was granted on April 19, 2021 (Docket Nos. 331 & 334). On April 23, 2021, Miramar filed its *Reply to Dr. William Cruz's Motion to Join and in Support of Debtor's Motion for Voluntary Dismissal* (Docket No. 345). On April 30, 2021, Dr. William Cruz filed a *Motion Requesting Leave to Sur-Reply* and the same was granted on May 3, 2021 (Docket Nos. 356 & 357). On May 10, 2021, Dr. William Cruz filed his Sur-Reply to Miramar's Response to Cruz's Motion in Support of Debtor's Motion for Voluntary Dismissal (Docket No. 365).

## Position of the Parties

### Debtor and Dr. William Cruz

The Debtor in its *Motion for Voluntary Dismissal* contends that the court should grant the dismissal of the case pursuant to 11 U.S.C. §1112(b) due to the following: (i) the Court's findings that the case cannot move to confirmation; (ii) that the Debtor's business is a profitable business with a going concern; and (iii) that the governmental restrictions due to the coronavirus pandemic have been relaxed—there is no longer a bankruptcy purpose to accomplish, and it is in the best interests of creditors that the case be dismissed.

The Debtor argues that "cause" exists to convert or dismiss this case due to the following: (i) lack of a bankruptcy purpose to fulfill, given that "… most of the economic dislocations associated with the governmental restrictions in response to the coronavirus pandemic that were projected and in fact disrupted the Debtor's business at the onset of the case have been either lifted or loosened, the tools provided by the Bankruptcy Code for preservation of the Debtor's going concern value are no longer required for the Debtor to maintain a healthy business operation for the benefit of its creditor [and] parties in interest." See In re OptlnRealBig.com, LLC, 345 B.R. 277, 283 (Bankr. D. Colo. 2006). "Likewise, when the bankruptcy purpose of a

case no longer exists, a creditor should not be permitted to prolong or sustain a case merely to take advantage of the benefits bankruptcy offers to creditors." In re Mazzocone, 183 B.R. 402, 413 (Bankr. E.D. Pa. 1995); and (ii) "[o]ther courts have held that, in small business cases, such as this one, cause exists to dismiss 'for failure to file a plan within the 300-day period or to timely obtain an extension." In re Randi's Inc., 474 B.R. 783, 786 (Bankr. S.D. Ga. 2012); In re Castle Horizon Real Estate, LLC, 2010 WL 3636160 at *2 (Bankr. E.D.N.C. 2010) ("if no party filed a plan within 300 days, then no relief is available"). In this case two disclosure statements and plans were filed, but none can go forward to confirmation. (Docket No. 293).

The Debtor argues that dismissal rather than conversion to Chapter 7 is appropriate because the Debtor was able to preserve the going concern of its business and is now in a legal position to deal individually with the rest of the creditors. Upon dismissal the going concern of the Debtor will be maintained indefinitely, as opposed to a Chapter 7 conversion. This will allow for the preservation of jobs and allow creditors to use any and all state law means to collect on the debts.

Dr. William Cruz joins the Debtor's motion for voluntary dismissal and further argues that Miramar's proposed competing Chapter 11 small business plan cannot be confirmed in a small business case pursuant to 11 U.S.C. §1129(e) due to the following: (i) only a plan that is filed in accordance with 11 U.S.C. §1121(e) may be confirmed. Miramar's competing plan was filed pursuant to 11 U.S.C. §1121(c); (ii) 11 U.S.C. §1121(e) does not confer a creditor standing to file a competing plan in a small business case. However, section 1121(c) gives standing to file such a plan in small business case. The court concluded that, "… nothing in subsection (e) limits the clearly established 1121(c) right of creditors to file their plans provided one of the conditions in that subsection… exists." Thunder Indus., Inc. v. Gunnison Energy Corp. (In re Riviera Drilling & Exploration Co.) 502 B.R. 863, 873 (10th Cir. 2013); (iii) In re Riviera Drilling & Exploration Co., 502 B.R. 853 (10th Cir. BAP 2013), "… in turn teaches and explains, that a creditor proposed plan (i.e. , a competing plan) is not filed under section 1121(e); rather, it is filed under Section 1121(c). Id. at 872. Because a creditor plan, i.e., a competing plan, is not

filed in accordance with section 1121(e), then a competing plan can never meet the confirmation statutory requirement of section 1129(e)" (Docket No. 365, pg. 3); and (iv) in In re Florida Coastal Airlines, Inc., 361 B.R. 286 (Bankr. S.D. Fl. 2007), the court held that, "… section 1129(e), which by its statutory text applies in all small business cases; only applies to all small business debtors. Id. at 292. Similarly, in the In re Riviera case, the court specifically conceded and recognized that, 'Congress did not provide for or consider [the] eventuality [of a competing plan] in a small business case. In re Riviera, supra, at *872. Moreover, the Court specifically recognized that section 1121(e) deadlines in fact defeated the ability to allow a creditor to file a competing plan. Id. at 873. Yet, based on its understanding of public policy the court arrived at the desired result even if at a strained statutory interpretation." Id." (Docket No. 365, pg. 7).

***Miramar and BPPR***

Miramar in its opposition to the Debtor's motion for voluntary dismissal contends that: (i) the motion for dismissal does not mention how the plan filed by Miramar would benefit the creditors and the bankruptcy estate; (ii) the Miramar plan provides for payment to all creditors upon the Effective Date, instead of allowing them to make use of any and all state law means to collect on their debts; (iii) the Debtor makes reference to the summary of monthly operating reports, but does not provide ant precise figures, nor any specific assertions, about its financial condition; (iii) the reason for the filing of the bankruptcy case was the execution of the judgment entered in favor of Porfirio Díaz & Heirs, as to which the Debtor has only indicated that it will continue litigation, and post a bond for the amount of the Díaz claim. The Debtor has not disclosed whether it has the funds sufficient to satisfy such judgment in the event that the Debtor does not prevail, the surety company would collect the amounts paid to Porfirio Díaz & Heirs from the Debtor; (iv) dismissal of the case does not serve the best interests of the creditors and the case should continue to move towards the final approval of the Miramar First Amended Disclosure Statement and First Amended Plan of Confirmation; (v) there is no cause for dismissal of the case because the Court has under its consideration the final approval of the Miramar First Amended Disclosure Statement and First Amended Plan of Reorganization; (v) it

has been resolved that there is no statutory deadline in a small business case for the filing of a reorganization plan by any party in interest other than the debtor. In re Florida Coastal Airlines, Inc., 361 B.R. 286, 292 (Bankr. S.D. Fla. 2007); (vi) in In re Riviera Drilling & Exploration Co., the Bankruptcy Appellate Panel for the Tenth Circuit determined that in a chapter 11 small business case: (a) a creditor may file a competing plan; (b) such a creditor plan may be filed after the 300 day term provided in 11 U.S.C. §1121(e), and in this case the bankruptcy court entered an order of confirmation of a creditor plan which was affirmed by the B.A.P. Id. at 874-875; (vii) in In re Simbaki, Ltd., 522 B.R. 917, 921 (Bankr. S.D. Tex. 2014), the court held that the restrictions of §1121(e)(2) apply only to plans filed by the debtor, and denied a motion to dismiss for the small business debtor not having confirmed a plan within the time frame fixed by 11 U.S.C. §1129(e) because a non-debtor plan proponent could still propose and obtain confirmation of a plan after the statutory deadline; (viii) in In re Angel Fire Water Co., LLC, 2015 Bankr. Lexis 170 (Bankr. D.N.M. 2015), the court concluded that a small business debtor's failure to meet the filing and confirmation deadlines would not constitute cause for dismissal because the deadlines established by 11 U.S.C. §§1121(e) and 1129(e) apply only to debtor plans, and not creditor plans; See also In re Shea, Ltd., 545 B.R. 529, 539-540 (Bankr. S.D. Tex. 2016); and (ix) "[c]ontrary to Dr. Cruz's argument, the interrelation of §§1121(e) and 1129(e) is precisely one of the different foundations for the different court's conclusion that creditors are not restricted by the deadlines established therein" (Docket No. 345, pg. 8).

There are two key issues before the court are: (i) whether 11 U.S.C. §§1121(e) and 1129(e) are applicable to a party in interest that files a competing plan in a small business case, meaning are the statutory deadlines applicable to competing creditor plans; and (ii) is there cause for dismissal or conversion to Chapter 7 pursuant to 11 U.S.C. §1112(b)(4).

**Applicable Law and Analysis**

Section 101(51C) defines the term "small business case" as a case filed under chapter 11 of this title in which the debtor is a small business debtor and has not elected that subchapter V

of chapter 11 of this title shall apply." 11 U.S.C. §101(51C). The term "small business debtor" is a defined term under section 101(51D)[1].

Section 1121(c) provides: "[a]ny party in interest, including the debtor, the trustee, a creditor's committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if—(1) a trustee has been appointed under this chapter; (2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan." 11 U.S.C. § 1121(c).

Section 1121(e) provides: [i]n a small business case—

(1) only the debtor may file a plan until after 180 days after the date of the order for relief, unless that period is--
    (A) extended as provided by this subsection, after notice and a hearing; or
    (B) the court, for cause, orders otherwise;
(2) the plan and a disclosure statement (if any) shall be filed not later than 300 days after the date of the order for relief; and
(3) the time periods specified in paragraphs (1) and (2), and the time fixed in sections 1129(e) within which the plan shall be confirmed, may be extended only if—
    (A) the debtor, after providing notice to parties in interest (including the United States trustee), demonstrates by a preponderance of the evidence that it is more likely than not that the court will confirm a plan within a reasonable period of time;
    (B) a new deadline is imposed at the time the extension is granted; and
    (C) the order extending the time is signed before the existing deadline has expired." 11 U.S.C. §1121(e).

Section 1129(e) provides: [i]n a small business case, the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121(e) not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3)." 11 U.S.C. §1129(e).

---

[1] The term "small business debtor" is defined in pertinent part as: "(A) subject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $2,725,625 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor." 11 U.S.C. §101(51D)(A).

Pursuant to section 1121(e) the debtor has a 180-day exclusive period and an additional 120-day nonexclusive period in which to file a plan, unless that period is extended or the court for cause orders otherwise. "By imposing these stringent requirements, 'Congress intended that bankruptcy courts be more active in 'judicial oversight of small business bankruptcy cases, which often are the least likely to reorganize successfully.'" Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy, ¶1121.07[1] (16th ed. 2021) (citing In re Darby Gen. Contracting, Inc., 410 B.R. 136, 143 (Bankr. E.D.N.Y. 2009) (quoting H.R. Rep. No. 109-31, pt. 1, at 92 (2005)). "In a small business case, after the small business debtor's 180-day exclusive period has expired, nondebtor parties in interest may file plans, regardless of whether the debtor files a plan within the exclusive period. Although section 1121(e)(2) provides that a plan and disclosure statement in a small business case may not be filed more than 300 days after the order for relief, recent decisions have held that a nondebtor party in interest may file a competing plan outside the 300-day period." Id. at ¶1121.07[2].

Section 1121(e)(3) provides that the court may extend the 300-day deadline to file a plan if the debtor meets the three (3) requirements of said section. The controversy pertaining to this section has arisen as to what is the effect if the debtor fails to timely file a plan or obtain an extension has on other interested parties. The Bankruptcy Code does not specify the consequences regarding the expiration of the 300-day deadline to file a plan of reorganization. Section 1121(e)(2) has been given two interpretations by the courts. The first interpretation is that this section prohibits the filing of any reorganization plan after the 300-days have passed after the order of relief has been entered (the "drop dead" deadline). See In re Randi's Inc., 474 B.R. 783 (Bankr. S.D. Ga. 2012); In re Sutherland, 2011 Bankr. Lexis 1949; 2011 WL 2078529 (Bankr. D. Colo. 2011); In re Castle Horizon Real Estate LLC, 2010 Bankr. Lexis 2900; 2010 WL 3636160 (Bankr. E.D.N.C.

2010); In re Rodriguez Sanchez, 429 B.R. 393 (Bankr. D.P.R. 2010). The second interpretation is to allow other interested parties to file a plan upon the 300-day deadline expiration. See In re Riviera Drilling & Exploration Co., 2012 Bankr. Lexis 5991; 2012 WL 6719591 (Bankr. D. Colo. 2012) aff'd In re Riviera Drilling & Exploration Co., 502 B.R. 863 (B.A.P. 10th Cir. 2013); In re Simbaki, Ltd., 522 B.R. 917 (Bankr. S.D. Tex. 2014); In re Shea Ltd., 545 B.R. 529 (Bankr. S.D. Tex. 2016); and In re Fla. Coastal Airlines, Inc., 361 B.R. 286 (Bankr. S.D. Fla. 2007).

Miramar filed its competing disclosure statement and plan on December 31, 2020 and filed the first amended disclosure statement and first amended plan of reorganization on January 15, 2021, that is, 300 days and 315 days from the date the order of relief was entered, respectively. The Debtor after requesting an extension of time which was granted to file its disclosure statement and plan of reorganization, filed the same on January 13, 2021, that is on day number 313 from the date of the order of relief. Pursuant to the extension of time requested by the Debtor, it had until February 6, 2021 to file the disclosure statement and plan of reorganization. (Docket Nos. 127 & 134). Therefore, in the instant case Miramar filed its disclosure statement and plan of reorganization within the 300 days after the order of relief and the amended disclosure statement and plan of reorganization within the extension of time requested by the Debtor and granted by the court which was until February 6, 2021. Thus, Miramar has abided by (complied with) section 1121(e). The issue is whether Miramar has to abide by section 1129(e) and confirm its plan within 45 days after the same is filed.

Section 1129(e) includes as a confirmation requirement in small business cases that confirmation of a small business plan must be obtained within 45 days after the plan is filed unless an extension is timely obtained. Section 1121(e)(3) references that requirement and provides that "[i]n a small business case, the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121(e) not later than 45 days

-11-

after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3)." 11 U.S.C. §1129(e). This court finds that sections 1121(e) and 1129(e) are intertwined and must be analyzed in tandem as to whether the same apply to non-debtor competing plans. This court follows the interpretation that sections 1121(e) and 1129(e) only pertain to small business debtors and not to parties in interest that file competing plans of reorganization in small business cases for the same to be confirmed.

In <u>In re Shea, Ltd.</u>, the court's analysis pertaining to 11 U.S.C. §§1121(e) and 1129(e) was the following:

> "Many courts, both within and outside of this jurisdiction, have convincingly concluded that §1129(e)'s 45-day confirmation deadline for a filed plan in a small business chapter 11 case does not apply to creditors. <u>In re Simbaki</u>, 522 B.R. at 920 ("Movants urge that the deadlines in §1121(e) and 1129(e) apply to non-debtor plan proponents… The Court overrules this contention."); <u>In re Riviera Drilling & Exploration Co.</u>, 502 B.R. 863 (10th Cir. BAP 2013); <u>In re Angel Fire Water Co., LLC</u>, 2015 Bankr. Lexis 170, 2015 WL 251570, at *6 (Bankr. D.N.M. 2015). Even without this persuasive support, this Court is independently convinced that this proposition is true. Under §1121(e)(3), the 45-day time period fixed in §1129(e) may be extended only if the small business debtor demonstrates the likelihood of plan confirmability. This puts §1129(e)'s extension into the exclusive province of the small business debtor's actions. It would be nonsensical to place the onus on the small business debtor to request an extension on a deadline and prove confirmability for a plan that it never filed while denying a creditor the chance to request an extension where the small business debtor may so do. Again, Congress evinced no intent to place creditors on a lesser footing than small business debtors. Rather, Congress provisioned a small business chapter 11 designation to reduce the time and expense required for small business debtors to find relief in a chapter 11 while requiring said debtors to move at an expedited pace. <u>In re Star Ambulance</u>, 540 B.R. 251, 257; <u>In re Barnes</u>, 308 B.R. 77, 79. It has been said that Congress created these special small business deadlines in order to prevent small business debtors from treating their small business cases as a "parking lot." <u>In re Simbaki</u>, 522 B.R. at 924. This Court thus concludes that §1129(e)'s 45-day deadline applies only to the small business debtor's plan in a small business case. The fact that a companion provision §1129(e), as a partner to the policy behind §1121(e), is construed as inapplicable to creditor

-12-

filed plans provides fabulous evidence that §1121(e) is also inapplicable to creditor filed plans. To otherwise conclude would make mincemeat out of both the letter and the spirit of §§1121(e) and 1129(e)." In re Shea, Ltd. 545 B.R. at 539-540; See also In re Riviera Drilling & Exploration Co., 502 B.R. at 873 ("We also agree with the reasoning in Florida Coastal that it would be absurd to condition allowing the confirmation of an otherwise confirmable creditor's plan on the debtor's taking action to extend the plan periods and that the change in the statutory language puts the onus on the debtor to request an extension of time in which to file its plan, not any plan").

This court agrees with the analysis of the court in In re Shea, Ltd. whereby the court after a thorough analysis concludes that section 1129(e)'s 45-day deadline applies only to the small business debtor's plan in a small business case and not to competing plans. This court also agrees with the Bankruptcy Appellate Panel for the Tenth Circuit in In re Riviera Drilling & Exploration Co., wherein the Bankruptcy Appellate Panel concluded that the controlling section to file competing plans once the exclusivity period lapsed even in small business cases was 1121(c), not 1121(e). The court's analysis was as follows:

"Reading 1121(e) with the rest of the section causes us to conclude that its purpose is to limit the time periods for debtors to file and confirm plans, not to address the consequences of other parties filing plans. We should read subsection (e) in context with the rest of the statute. As another court has stated, 'Section 1121(e) should not be read in a vacuum.' Read in this way, the debtor's §1121(b) exclusivity period is extended to 180 days in small business cases by §1121(e)(1). The plan must be filed not later than 300 days after the order for relief, unless that period or the 180-day period are extended on motion of the debtor and if the debtor carries its burden to prove the likelihood that a plan will soon be confirmed. But if the debtor fails to file a plan within either the 180-day or 300-day periods, and if those periods are not extended, nothing in subsection (e) limits the clearly established §1121(c) right of creditors to file their plans provided one of the conditions in that subsection (as modified by the subsection (e) timelines) exists. Even §1129(e)'s 45-day confirmation deadline may be read in a consistent manner because it specifically makes that deadline apply to plans that are 'filed in accordance with §1121(e)'—plans timely filed by debtors."
In re Riviera Drilling & Exploration Co., 502 B.R. at 874.

Thus, this court holds that 11 U.S.C. §§1121(e) and its companion section 1129(e) only apply to small business debtors, not to parties in interest that file competing plans in small business cases and that the controlling section for parties in interest to file competing plans in a small business case is 11 U.S.C. §1121(c). However, this Court does not agree that participating creditors or parties in interest in a small business case may file a plan of reorganization *ad infinitum* because this goes against the construct of the small business case which was designed to expedite the filing and plan of reorganization confirmation process as a way to balance the competing interests of debtors and creditors to ensure a prompt confirmation process.

The next issue the court will delve into is the Debtor's request for voluntary dismissal pursuant to 11 U.S.C. §1112(b)(4).

### ***11 U.S.C. §1112(b)***

Section 1112(b) of the Bankruptcy Code mandates the bankruptcy court, after notice and a hearing, to convert or dismiss a chapter 11 case, if the movant establishes one of the enumerated bases for cause by a preponderance of the evidence pursuant to section 1112(b)(4) and the case is devoid of unusual circumstances pursuant to 11 U.S.C. §1112(b)(2). Section 1112(b)(1) and (2) provide, in pertinent part:

> (1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
>
> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that –

-14-

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph 4(A)—

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court."

11 U.S.C. §1112(b)(1) and (b)(2).

Section 1112(b)(1) "invokes a two-step analysis, first to determine whether 'cause' exists either to dismiss or convert the chapter 11 proceeding to a chapter 7 proceeding, and second to determine which option is in the best interest of creditors and the estate.'" In re Costa Bonita Beach Resort, Inc., 513 B.R. 184, 200 (Bankr. D.P.R. 2014) (quoting Rolex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.), 14 F. 3d 240, 242 (4th Cir. 1994), and citing In re Mech. Maint., Inc., 128 B.R. 382, 386 (E.D. Pa. 1991)); see also In re Hoover, 828 F. 3d at 8 (similarly describing a two-step inquiry); Francis v. Harrington (In re Francis), 2019 Bankr. Lexis 826, *10 (B.A.P. 1st Cir. 2019). Once "cause" is established, a court is required to consider whether to dismiss or convert the case considering the best interest of creditors and the estate. "[T]he inquiry for [the second] element cannot be completed without comparing the creditors' interests in bankruptcy with those they would have under state law." In re Cont'l Holdings, Inc., 170 B.R. 919, 927 (Bankr. N.D. Ohio 1994) (quoting In re Superior Siding & Window, Inc., 14 F. 3d at 243).

The initial burden is on the movant to establish by a preponderance of the evidence standard that there is "cause" for either conversion or dismissal of the Chapter 11 case, whichever is in the best interests of creditors and the estate. Once the movant establishes "cause," the burden shifts to

-15-

the debtor to prove the "unusual circumstances" that establish that dismissal or conversion to chapter 7 is not in the best interests or creditors and the estate. Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy, ¶1112.05[2] (16th ed. 2021). Once "cause" has been established, "the court's discretion is limited; it must grant some form of relief unless §1112(b)(2) applies" In re Costa Bonita Beach Resort, Inc., 513 B.R. 184, 195 (Bankr. D.P.R. 2014); In re Korn, 523 B.R. 453, 465 (Bankr. E.D. Pa. 2014) (footnote omitted); Francis v. Harrington (In re Francis), 2019 Bankr. LEXIS 826, *12, 2019 WL 1265316 (B.A.P. 1st Cir. 2019). In order for the defense under 11 U.S.C. §1112(b)(2) to apply, the respondent/objecting party must establish "unusual circumstances" that evince that conversion or dismissal is not in the best interest of creditors and must also establish five other elements; namely: (1) conversion or dismissal "is not in the best interests of creditors and the estate;" (2) there is a reasonable likelihood that a plan will be confirmed within the applicable time periods or within a reasonable time; (3) the grounds for dismissal include an act or omission of the debtor other than under paragraph (4)(A); (4) there is a reasonable justification for the act or omission of the debtor; and (5) the act or omission may be cured within a reasonable time fixed by the court. In re Korn, 523 B.R. at 465; 11 U.S.C. §1112(b)(2)(A) & (B).

The bankruptcy court retains discretion in determining whether unusual circumstances exist and whether conversion or dismissal is in the best interests of the creditors and the estate. Costa Bonita Beach Resort, Inc., 513 B.R. at 195 (citing Gilroy v. Ameriquest Mortg. Co. (In re Gilroy), 2008 Bankr. LEXIS 3968, 2008 WL 4531982, (B.A.P. 1st Cir. 2008)); In re Korn, 523 B.R. at 465. A determination of unusual circumstances is fact intensive and contemplates facts that are not common to Chapter 11 cases. See Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy, ¶1112.05[2] (16th ed. 2021). Absent unusual circumstances, the statute requires conversion to chapter 7 or dismissal of the case, unless the court determines that the appointment

of a trustee or an examiner under section 1104(a) is in the best interests of creditors or the estate. 11 U.S.C. §1112(b)(1); Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[4] (16th ed. 2021). "Likewise, if the moving party seeks dismissal rather than conversion, or conversion rather than dismissal, the moving party should demonstrate why the requested alternative is in the best interests of the creditors and the estate" Id.

### *"Cause" under 11 U.S.C. §1112(b)(4)*

Although Section 1112(b)(4) fails to define what the term "cause" means, it provides a list of circumstances that constitute "cause" for conversion or dismissal. This list is non-exhaustive and therefore a case may be dismissed or converted for other causes. In re Costa Bonita Beach Resort, Inc. 513 B.R. at 196 citing (In re AmeriCERT, Inc., 360 B.R. at 401; Tuli v. U.S. Trustee, 124 Fed. Appx. 830, 831 (5th Cir. 2005); In re Gonic Realty Trust, 909 F. 2d 624, 626-27 (1st Cir. 1990) ("The court may have discretion in determining what additional circumstances, not enumerated in section 1112(b)(4), constitute cause"). See also; Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[6] (16th ed. 2021) ("The list should read in the disjunctive, utilizing the term 'or,' rather than 'and'. Otherwise, this section would lead to an absurd result"). "Some of the enumerated bases for cause under section 1112(b)(4) are more subjective than others" Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[4]. However, if the basis of cause is based on an objective event, then the statute does not provide unfettered discretion in determining whether cause exists. "Similarly, subsections 1112(b)(4)(B), providing that 'gross' mismanagement constitutes cause, and 1112(b)(4)(F), providing that an unexcused failure to satisfy timely any filing or reporting requirement, each give the court implicit discretion in determining whether the mismanagement was sufficiently gross or the failure to file reports was sufficiently unexcused to constitute cause." Id.

The Debtor in its *Motion for Voluntary Dismissal* argues that the court should grant the dismissal of the case pursuant to 11 U.S.C. §1112(b) due to the following: (i) the Court's findings that the case cannot move to confirmation; (ii) that the Debtor's business is a profitable business with a going concern; and (iii) that the governmental restrictions due to the coronavirus pandemic have been relaxed—there is no longer a bankruptcy purpose to accomplish, and it is in the best interests of creditors that the case be dismissed.

As to the first "cause" for dismissal of the case, the court on February 12, 2021 denied the confirmation of the Debtor's plan of reorganization based upon the Debtor's admittance that the Chapter 11 Small Business Plan dated January 13, 2021 (dkt #148) could not be confirmed because no class of creditors accepted the plan. The court denied the approval of the Debtor's disclosure statement (dkt #147) because it failed to disclose the value of the Debtor's business and failed to address the impact of this court's February 5, 2021 decision in which the court held that the amounts owed to BPPR are an administrative claim (Docket No. 266). This court concludes that section 1112(b)(2)(A), which specifically requires that a debtor in a small business case demonstrate that there is a reasonable likelihood that a plan of reorganization will be confirmed within the timeframes established in sections 1121(e) and 1129(e), does not apply to non-debtor competing plans. However, this court also determines that the non-debtor plan proponent if these sections do not apply, bears the burden to establish that there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time which is aligned with "cause" to dismiss pursuant to section 1112(b)(4)(J)[2]. See 11 U.S.C. §§1112(b)(2)(A) and 1112(b)(4)(J). "In addition to the deadlines established for small business debtors under the Code, the court, in its discretion, may establish a final deadline for filing a plan of reorganization in any case to ensure that the

---

[2] Section 1112(b)(4)(J) establishes as "cause" to dismiss or convert the "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court." 11 U.S.C. §1112(b)(4)(J).

-18-

process does not outlive the likelihood of its usefulness." Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[6][j] (16th ed. 2021). In the instant case, the court has not issued an order to Miramar setting a deadline regarding the confirmation of the first amended plan of reorganization. Therefore, this court finds that there is no "cause" for dismissal based upon this court's order denying the Debtor's plan of reorganization. At this juncture, this court has taken under advisement the confirmation of Miramar's first amended plan of reorganization. However, there is a reasonable likelihood that the plan may be confirmed.

The Debtor's second "cause" for dismissal is that there is no longer a bankruptcy purpose to accomplish, and it is in the best interests of creditors that the case be dismissed. The Debtor further argues that the since the governmental restrictions due to the coronavirus pandemic have been relaxed there is no longer a bankruptcy purpose to accomplish. The Debtor filed for bankruptcy on March 6, 2020, which was prior to the governmental restrictions being in effect. On June 16, 2020, a status meeting was held in which the Debtor disclosed that the reason for filing bankruptcy was to stop the execution of a Judgment. The Minutes disclose that the court noted an issue with cash flow as disclosed in the March and April 2020 Monthly Operating Reports (Docket Nos. 36 & 37) (Docket No. 48).

The Debtor discloses in its *Motion for Voluntary Dismissal* that from the years 2017 to late 2019 it was part of a state lawsuit case with the Díaz Family in which the state court entered a Judgment on December 19, 2018 in favor of the Díaz Family and against the Debtor for the amount of $242,130.00. The Debtor appealed to the Puerto Rico Court of Appeals and this court ruled that it lacked subject matter jurisdiction to adjudicate one of the Debtor's defenses against such Judgment because the Bankruptcy Court has exclusive jurisdiction.

-19-

On September 16, 2019, the Debtor filed a complaint against Dito, Inc. et. als.[3] While the Debtor prosecuted the adversary proceeding, the Díaz Family commenced the execution of its state court Judgment and obtained a garnishment order against the Debtor's assets. On February 10, 2021, the Bankruptcy Court in its *Opinion and Order* regarding this adversary proceeding held that it has no jurisdiction over this third-party dispute. Both, the Destilería Nacional, Inc. and the Díaz Family (co-defendants), are all third parties unrelated to the Dito, Inc. bankruptcy case. Destilería Nacional, Inc. seeks to revoke an adverse court action that has no effect on the bankruptcy estate. The court concluded that even if this court has jurisdiction, the complaint seeks to relitigate issues that were already presented before the state courts and as such it is barred by the doctrine of collateral estoppel. (Lead Case No. 15-06573, Adv. Proceeding No. 19-00426, Docket No. 125). Destilería Nacional, Inc. appealed this *Opinion and Order* on February 24, 2021 to the First Circuit Bankruptcy Appellate Panel which is pending adjudication.

Moreover, this court in its Opinion and Order held that the Payment Protection Program Loan ("PPP") funds in the amount of $88,500.00 that were disbursed by BPPR to Debtor during the bankruptcy proceeding be allowed as an administrative expense priority (Docket Nos. 233 & 328).

The Debtor cites the case of In re OptInRealBig.com, LLC, 345 B.R. 277 (Bankr. D. Co. 2006), to support its position that the instant case should be dismissed because there is no longer a bankruptcy purpose to accomplish. In In re OptInRealBig.com, LLC, the court granted the joint motion to dismiss the two cases, but the circumstances were very different. The court as part of its analysis considered that the debtors' business was very profitable and that dismissal meant the reduction of a $57 million claim against the debtors down to $7 million agreed to through a

---

[3] The adversary proceeding is allegedly related to case number 15-06573 (MCF), Dito, Inc., and was filed before the Debtor, Destilería Nacional, Inc. filed the instant Chapter 11 petition on March 6, 2020.

-20-

settlement (the claimant, Microsoft was the debtors "primary litigation nemesis"), and the elimination of the American Family Claims. The court found that this substantial reduction in claims contributed to a greater economic value of the debtors outside of bankruptcy. The court concluded that the debtors had accomplished a substantial reorganization through the mediation and settlement with two of their primary claimants and consequently, the debtors' circumstances obtained through the settlement of these claims constituted sufficient cause for dismissal. In re OptInRealBig.com, LLC, 345 B.R. at 283-284[4]. The court also concluded that the debtors had demonstrated that their profit potential was large enough that they were worth a great deal more to their creditors as a going concern, outside of bankruptcy that they were as debtors subject to liquidation by a chapter 7 trustee.

---

[4] The court's analysis was as follows:

"The Debtors no longer desire to continue down the road to reorganization. The evidence makes it clear moreover that reorganization is not necessary for these Debtors. They are able to return to the marketplace and operate successfully without the assistance of the Bankruptcy Court. Reorganization is a process that is costly and time consuming for the parties and for the Court. Where there has been a material change in a debtor's circumstances, such that reorganizing under the protection of the Bankruptcy Court no longer serves the interests of a debtor or its creditors, then the Court believes that cause exists for dismissal or conversion of the case under §1112(b).

The Debtors' circumstances have materially changed since the filing of the case. At the time the case was filed, the Debtors were engaged in litigation with Microsoft, a very formidable litigation adversary, and also with their own insurance company over the question of whether or not the litigation costs were going to be covered. Those litigation matters took time and resources away from the Debtors' business. The Debtors' believed that their business was threatened due to the combined effects of that litigation along with other smaller lawsuits filed in other courts throughout the country.

The Debtors made the most of the breathing spell that they received as a result of their bankruptcy filings. They entered into mediation with Microsoft and American Family. The settlements that they entered into fully resolve those litigation matters upon dismissal of the cases. Through the mediation and ultimate settlement of those matters, the Debtors have accomplished a substantial reorganization. The Court finds that the change in the Debtors' circumstances obtained through the settlement of the Microsoft and American Family claims is sufficient cause for dismissal or conversion." In re OptInRealBig.com, LLC, 345 B.R. at 283-284.

-21-

Unlike the case cited by the Debtor of In re OptInRealBig.com, LLC, in the instant case there has been no substantial reduction in claims which have contributed to a greater economic value of the debtors outside of bankruptcy. Moreover, the Porfirio Diaz claim which was one of the reasons the Debtor filed for bankruptcy which was to stop the execution of a state court Judgment is currently on appeal before the Bankruptcy Appellate Panel and is pending adjudication. In addition, the court in its Opinion and Order held that the PPP funds in the amount of $88,500.00 that the Debtor requested and were disbursed by BPPR to the Debtor post-petition be allowed as an administrative expense priority (Docket Nos. 233 & 328). The court notes that the Debtor was able to decrease significantly its tax debt with the Treasury Department of Puerto Rico.

In the instant case, there are claims filed by the Municipal Revenue Collection Center ("CRIM") in the amount of $29,960.78 (proof of claim #2-2) for personal property taxes for the year 2019 (Docket No. 249). There are also claims by the Puerto Rico Power Authority ("PREPA") in the amount of $112,454.98 (proof of claim #4-1) and by the Puerto Rico Aqueducts and Sewer Authority ("PRASA") in the amount of $12,669.03 (proof of claim #9-1). The Puerto Rico Industrial Development Company ("PRIDCO") filed proof of claim #7-1 in the amount of $84,292.89 for the lease of commercial property and it disclosed that the amount necessary to cure any default as of the date of the petition was $76,800.19.

The Debtor's amended April 2020 Monthly Operating Report discloses an accounts payable aging report that totals $253,430.51 of which $81,700.55 pertains to accounts payables that are 91 days and older; $108,731.36 for accounts payables that are 61-90 days old; $36,048.93 for accounts payable that are 31-60 days old; $16,332.73 for accounts payable that are 0-30 days old; and $10,616.94 for current accounts payables (Docket No. 381). The accounts payables that pertain to PREPA that are 61-90 days old amount to $80,134.54 out of a total of $92,781.66; the

-22-

accounts payables for PRASA that are 31-60 days old are in the amount of $3,000.00 out of a total of $5,907.49; and the accounts payables for PRIDCO that are 91 days and older are in the amount of $44,956.22 out of a total of $67,434.42. (Docket No. 381, pg. 13, Exhibit E). The ending cash balance on April 30, 2020 was in the amount of $10,946.55 (Docket No. 381, pg. 2). The number of employees as of the date of the April 2020 monthly report was 12.

The Debtor's amended May 2020 Monthly Operating Report discloses an accounts payable aging report that totals $268,313.92 of which $190,593.59 pertains to accounts payables that are 91 days and older; $34,987.25 account for accounts payables that are 61-90 days old; $16,332.73 for accounts payable that are 31-60 days old; $19,163.63 for accounts payable that are 0-30 days old; and $7,236.72 for current accounts payables (Docket No. 382, pg. 7, Exhibit E). The accounts payables that pertain to PREPA that are 61-90 days old amount to $80,134.54 out of a total of $96,949.21; the accounts payables for PRASA that are 31-60 days old are in the amount of $3,000.00 out of a total of $5,907.49; and the accounts payables for PRIDCO that are 91 days and older are in the amount of $52,448.92 out of a total of $74,927.02. (Docket No. 382, pg. 7, Exhibit E). The number of employees as of the date of the May 2020 monthly report was 12. The ending cash balance on May 31, 2020 was in the amount of $86,497.21 (Docket No. 382, pg. 2). The court notes that on May 6, 2020, the Debtor received the amount of $88,500.00 from the PPP loan (Docket No. 382, pg. 23).

The Debtor's March 2021 Monthly Operating Report discloses an accounts payable aging report that totals $54,748.03 of which $31,493.26 pertains to accounts payables that are 91 days and older; $5,343.80 for accounts payable that are 61-90 days old; $12,019.26 for accounts payable that are 31-60 days old; $3,812.53 for accounts payable that are 0-30 days old; and $2,079.17 for current accounts payables (Docket No. 364). The accounts payables that pertain to PREPA that are 91 days and older amount to $31,493.26 out of a total of $31,493.26; and the accounts payables

for PRIDCO that are 61-90 day are in the amount of $5,343.80 and the accounts payables that are 31-60 days are also in the amount of $5,343.80 out of a total of $10,687.60. (Docket No. 364, pg. 17). The ending cash balance on April 30, 2021 was in the amount of $66,486.62 (Docket No. 364, pg. 2). The number of employees as of the date of the May 2021 monthly report was 12. The court notes that in the April 2021 monthly accounts payable aging report there is a PRASA account payable that is 31-60 days in the amount of $2,146.74 which was not included as an account payable that is 0-30 days old in the March 2021 monthly accounts payable aging report.

The Debtor's April 2021 Monthly Operating Report discloses an accounts payable aging report that totals $50,220.07 of which $39,975.07 pertains to accounts payables that are 91 days and older; $6,905.94 for accounts payable that are 31-60 days old; $3,339.06 for accounts payable that are 0-30 days old; and $0.00 for current accounts payables (Docket No. 378). The accounts payables that pertain to PREPA that are 91 days and older amount to $31,493.26 out of a total of $31,493.26; the accounts payables for PRASA that are 31-60 days old are in the amount of $2,146.74 out of a total of $2,146.74; and the accounts payables for PRIDCO that are older than 91 days are in the amount of $5,343.80 out of a total of $5,343.80. (Docket No. 378, pg. 22). The ending cash balance on April 30, 2021 was in the amount of $59,990.67 (Docket No. 378, pg. 2). The number of employees as of the date of the April 2021 monthly report was 12.

The court notes that the Debtor's accounts payables as disclosed in the monthly operating reports have decreased from April 2020 to April 2021. However, the court finds that the Debtor's aging of accounts payables report discloses that it has difficulty making the monthly payments of some of the basic costs of its operations such as its monthly utilities bills to PRASA and PREPA and its monthly rent for its commercial space to PRIDCO.

Based upon the analysis herein, the court finds that the Debtor's position that "cause" exists to dismiss the instant case because there is a lack of a bankruptcy purpose is not supported by the

current financial condition of the Debtor in which it currently is unable to keep current on its monthly operating expenses coupled with the fact that there has been no substantial reduction in claims which could potentially have contributed to a greater economic value of the debtor outside of bankruptcy and which would have resulted in the best interests of the creditors.

Conclusion

In view of the foregoing reasons, the Debtor's motion for voluntary dismissal is hereby denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 21st day of June 2021.

Enrique S. Lamoutte
United States Bankruptcy Judge